**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| Josephine Adeline White,  ) | |
|     *Plaintiff*,  ) | |
| ) | Case No. 16 CV 50042 |
| v.  ) | |
| ) | Magistrate Judge Iain D. Johnston |
| Nancy A. Berryhill,[1]  ) | |
| Acting Commissioner of the  ) | |
| Social Security Administration,  ) | |
|     *Defendant*.  ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Josephine Adeline White, brings this action under 42 U.S.C. § 405(g), seeking remand of the decision denying her social security disability benefits. For the reasons set forth below, the decision is remanded.

### I. BACKGROUND

On June 26, 2012, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging a disability beginning on March 1, 2008. R. 92, 233-34. Plaintiff's applications were denied initially on September 19, 2012, and upon reconsideration on May 28, 2013. R. 148-51, 156-59. On September 30, 2014, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 55-91. Plaintiff was represented by counsel. R. 55, 57.

Plaintiff testified to a plethora of ailments. These ailments included obesity; pain in her extremities, including her hands; difficulty standing, sitting and walking; glaucoma; chronic headaches; and asthma.

At the hearing, Plaintiff testified that she was 54 years old, and recalled having a 10th-

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the defendant for Carolyn W. Colvin.

grade education. R. 58. She reported her height at 5'9", and weight as being approximately 250 pounds. R. 59. The ALJ acknowledged that Plaintiff had an approximate body mass index of 37[2]. *Id*. She testified to earning income after her onset date, by braiding hair. *Id*. Plaintiff further indicated that she continued to work braiding hair despite the pain in her hands, because it was her only source of income. R. 64. Plaintiff eventually stopped working because her hands started hurting her too much.. R. 64. She indicated, "My hand[s] will stay swollen all the time, aches all the time, and it's causing me from doing any work ... It'll stay swollen." R. 76. Plaintiff further reported experiencing problems with her legs and back. *Id*. She expressed difficulties sitting and standing for long periods of time due to pain in her legs and knees, and also attributed these problems to swelling in her feet. R. 64-65. In addition to her feet, Plaintiff experienced swelling in her hands, legs, and knees. R. 78. Plaintiff would rotate between sitting and standing while braiding hair to cope with her condition. R. 72-73.

Plaintiff reported using a cane for approximately two years. R. 59, 64. She indicated, "I use it for my legs … to keep my balance … if I stand too long, or walk, it's like I'm … losing my ability to stand …." *Id*. When asked how long she could stand and walk, Plaintiff responded by saying, "I probably can sit and stand for about … an hour before I have to move." R. 72. Plaintiff reported that the pain she experiences in her back, legs, knees, and feet is a 9 on a 10-point scale. R. 65, 72. She further estimated that the most she can lift and carry without injuring herself is about 5 or 10 pounds. R. 74.

Plaintiff also told the ALJ that she suffers from glaucoma. R. 66. She reported, "discomfort in [her] eyes in the back … they stay sore … like that" and attributed her eye pain to glaucoma. R. 66. Plaintiff indicated that she treats her glaucoma with eye drops that she will

---

[2] Body Mass Index, or BMI, is a measurement of body fat based on height and weight that applies to adult men and women. Individuals who have a BMI of 30 or greater are considered obese. National Institutes of Health, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited October 10, 2017).

need to use for the rest of her life. *Id.* She first recognized a problem with her eyes after her vision started getting blurry, and reported seeing double and sometimes four things at one time. R. 66, 69. Plaintiff testified that despite wearing glasses, her vision is still blurry. R. 66. However, Plaintiff confirmed that she can still find her way around the grocery store with the help of her daughter. R. 67.

In addition, Plaintiff reported experiencing chronic headaches, which prevents her from working. R. 68. She believes that her eyes are the cause of her headaches. R. 67-69. Plaintiff told the ALJ that her headaches have been, "going on for about … six months." R. 70-71. She reported experiencing headaches at least two or three times per day, and indicated that the pain can sometimes wake her up from her sleep. R. 68. Plaintiff told the ALJ that she did not suffer from headaches when she was braiding hair. R. 70.

Plaintiff also revealed that she suffered from asthma. R. 71. She indicated that she uses two different asthma pumps, and that she gets a breathing treatment if she goes to the emergency room. *Id.*

A vocational expert ("VE") testified at the hearing, and indicated that within the Dictionary of Occupational Titles[3] ("DOT") there is no separate designation for braiding hair, but a generic DOT 332.271-018 for hair stylist exists, SVP: 6, which includes skilled and light work as typically performed. R. 80. The VE recognized that hair stylist includes a range of activities that may involve color, cut, and perm, and that Plaintiff did a more specific aspect of styling (i.e. braiding hair) versus the whole range of hairstyling. R. 81. For this reason, the VE told the ALJ that Plaintiff's hair braiding was (at least) a semiskilled activity, with a SVP of 4. *Id.* The VE further testified that under the ALJ's hypothetical, which described the same work

---

[3] The DOT lists specific skill levels known as specific vocational preparation ("SVP") that are required for occupations.

background, education, and limitations as Plaintiff, this person could meet the demands of work that Plaintiff had done before. R. 82. The VE listed the following unskilled light jobs that are available to Plaintiff: cleaner and housekeeper, DOT 323.687-014, SVP: 2, and cafeteria attendant, DOT 311.677-010, SVP: 2. The VE further noted that all of these positions required "frequent" handling and "occasional" fingering. R. 89. She indicated that an individual who had a manipulative capacity below this, like occasional handling, could not meet the demands of light work. R. 89.

The VE also testified that under the ALJ's hypothetical, a person in Plaintiff's position could not stand on her feet for more than an hour at a time, and required a cane to ambulate. R. 83. The VE testified that the vast majority of unskilled light work is "on-your-feet," that required "full range of … six out of eight hours," and that the "one-hour stand would not be compatible." *Id*. The VE further opined that light jobs required lifting and carrying more than 5 pounds. R. 85. She also noted that a person using a cane for standing or walking purposes would not be compatible for this position, because it would require carrying and lifting objects. *Id*. When the ALJ presented the VE with additional hypotheticals that involved individuals who no longer had the capacity for near acuity, the VE confirmed that sedentary work would be available for these individuals. R. 84. The VE further indicated that cafeteria attendant required occasional near acuity, while cleaner and housekeeper did not.

On January 8, 2015, the ALJ issued his ruling, finding that Plaintiff was not disabled. R. 21. The ALJ found that Plaintiff had the following severe impairments: obesity, asthma, disc herniation with degenerative disc disease, spondylosis and knee arthritis. R. 14. Although the ALJ touched briefly on the impairments that Plaintiff testified to at the hearing, he did not find that they affected her ability to work. R. 14-21. The ALJ concluded that Plaintiff had the

4

residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except no more than occasional ramps/stairs; no more than occasional ladders, ropes or scaffolds;[4] no more than occasional stooping, crouching, kneeling and crawling; no more than only frequent fingering; no more than constant handling and reaching; and no exposure to excessive dust, fumes, odors or temperature extremes. R. 16. He further determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as housekeeper and cafeteria attendant. R. 20-21.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id*. Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to

---

[4] That the ALJ would even remotely consider that Plaintiff could climb a rope, ladder or scaffold – even only occasionally – is stunning.

5

support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 CV 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

## III. DISCUSSION

Plaintiff argues that the ALJ's decision should be remanded because the ALJ's RFC assessment was not supported by substantial evidence. In particular, Plaintiff contends that the ALJ failed to include appropriate limitations in the RFC regarding: (1) her ability to finger and handle; and (2) her glaucoma.

### *A. Fingering and Handling*

Plaintiff argues that the ALJ's inclusion in her RFC that she was capable of constant handling and frequent fingering was not supported by substantial evidence. An individual's RFC is her ability to do physical and mental work activities on a sustained basis, despite limitations from her impairments. 20 C.F.R. § 404.1545(a). In assessing Plaintiff's RFC, the ALJ must consider all of Plaintiff's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p.

Records from the Swedish American Hospital reveal Plaintiff's chief complaint during her visit to the emergency room was "[h]and pain." R. 539. Plaintiff experienced some swelling with nodules, and swelling in the palm of her hands. *Id*. Records from the Orthopedic Association of Northern Illinois also revealed that Plaintiff appeared complaining of tightness and swelling of her hands. R. 603. Further, a progress note from Dr. Shadi Marina, M.D. from Crusader Community Health indicates the reason for Plaintiff's appointment was that Plaintiff's

6

arms and fingers were tingling, and that numbness and tingling in her hands was assessed. R. 647. Light duty activity was advised for treatment, and Dr. Marina's treatment note also indicated that her numbness was likely related to her work. *Id.* The medical evidence led two state agency physicians to find that Plaintiff was limited to occasional fingering and handling. R. 100 (Dr. Marion Panepinto), R. 119 (Dr. Julio Pardo).[5]

Despite the state agency physicians' opinions that Plaintiff could perform "occasional fingering" at best, the ALJ concluded that she can complete "frequent" fingering, and "constant" handling. R. 16. The ALJ did not cite to any medical evidence that would support his findings for "frequent fingering and constant handling." Plaintiff testified about her hand pain, and her complaints were documented throughout her medical records, but the ALJ never directly addressed what impact this pain had on her ability to perform work during a typical day. Social Security Regulation 96-8p requires the ALJ's "RFC assessment to include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." The ALJ gave the state agency physicians' opinions "some weight" and confirmed that their opinions were consistent with the medical evidence in the record, R. 19, but then adopted less restrictive limitations without explaining why and in disregard of medical records that documented Plaintiff's pain, swelling, and tingling in her hands. R. 539, 603, 630, 647, 666, 679. The Commissioner argues that the ALJ was not required to rely entirely on one medical opinion, and was therefore free to reach a conclusion different than the agency physicians'. *See Schmidt v. Astrue*, 496, F.3d 833, 845 (7th Cir. 2007) ("ALJ not required to rely entirely on a particular physician's opinion or choose between the opinions"); *Eggleston v.*

---

[5] Two painfully obvious points jump out here: first, the VE testified that a person who could only perform occasional handling would not meet light work; and second, two state agency physicians both specifically found that Plaintiff was limited to occasional handling. Nevertheless, the ALJ found Plaintiff could perform light work.

7

*Colvin*, No. 13 CV 5208, 2015 U.S. Dist. LEXIS 60409, at *9 (N.D. Ill. May 7, 2015) (ALJ may calculate an RFC with limitations different than the physicians' on record). However, when doing so here, the ALJ failed to address the discrepancies between his findings and those of the state agency physicians as well as the other medical evidence. Indeed, the only way for the ALJ to reach the result here is to play doctor, which ALJs cannot do. *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996).

The Commissioner argues any error was harmless. Although the ALJ adopted an RFC that included frequent fingering and constant handling, in the hypothetical he presented to the VE he asked about occasional fingering and frequent handling, which the VE testified would allow for work as a housekeeper or cafeteria attendant. An ALJ's error in adopting an RFC is harmless if limitations supported by the record are provided to a VE, who then determines that jobs remain available to the claimant that account for the limitations. *Johnson v. Colvin*, 14 CV 8580, 2016 U.S. Dist. LEXIS 123206, at *29 (N.D. Ill. Sept. 12, 2016). But the state agency physicians concluded that Plaintiff was limited to occasional, not frequent, handling, and the VE testified that occasional handling would rule out housekeeping, cafeteria, and any light work. R. 89. Because the ALJ never explained how the evidence supported frequent handling, and because a limitation to frequent handling would rule out both of the representative jobs the ALJ concluded Plaintiff could still perform, the error was not harmless.

### *B. Glaucoma*

Plaintiff contends that the ALJ did not account for the limitations imposed by her glaucoma. In his decision, the ALJ found that Plaintiff's glaucoma, "does not require accommodation for far or near acuity or work environment," and that her glasses provide "only minor correction and … [she] uses drops." *Id.* The ALJ further pointed out that Plaintiff "does

8

not have cataracts … her field of vision and motility are full," and her impairment only "causes … slight functional impact." *Id.*

Plaintiff contends the ALJ's conclusion is at odds with her history of glaucoma as documented throughout her testimony and medical records. R. 66, 319, 389, 503-04, 506, 655-57. On May 7, 2014, optometrist Dr. Vasana Lerdvoratavee noted in her assessment of Plaintiff that she had primary open-angle glaucoma. R. 657. Dr. Lerdvoratavee's treatment plan for Plaintiff included eye drops at bedtime, and a check-up in six months. *Id.* Dr. Lerdvoratavee's assessment does not state that Plaintiff's glaucoma requires no accommodation or causes no limitation. *Id.* Dr. Annette Olin, M.D. also noted Plaintiff's glaucoma in her assessment, and indicated that she would try to get Plaintiff started on medication. R. 503-04.

At the hearing, Plaintiff told the ALJ that she had glaucoma. R. 66. She testified that she had problems with "discomfort in [her] eyes in the back." *Id.* Plaintiff told the ALJ that she treats her glaucoma with eye drops that she will need to use for the rest of her life. *Id.* She further stated that her doctor will check on her condition. *Id.* Plaintiff reported that she first noticed a problem with her eyes when her vision became blurry, and she started seeing double, and sometimes four things at one time. *Id.* She indicated that even with glasses, her vision is still blurry. *Id.* She told the ALJ that her eye pain causes her headaches, and her headaches ultimately prevent her from working. R. 67-68.

The Plaintiff contends that the ALJ "played doctor" repeatedly throughout his decision by making medical judgments—such as recognizing that Plaintiff was not limited by her glaucoma—without citing to the opinion of any medical source in support. For instance, Plaintiff asserts that the ALJ interpreted medical records himself rather than seeking assistance. *See Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (ALJs should "rely on expert opinions

9

instead of determining the significance of particular medical findings themselves"); *Rohan*, at 970 ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Moreover, Plaintiff argues, the ALJ's interpretation was flawed. For instance, the ALJ concluded that Dr. Lerdvoratavee's report established that Plaintiff had full motility and field of vision, when in fact the report appears to state only that Plaintiff's motility was full, without commenting on her field of vision.

In response, the Commissioner contends that Plaintiff bore the burden of submitting a medical opinion on her glaucoma for the ALJ to consider. And in any event, the Commissioner argues, even if the ALJ failed to include limitations due to glaucoma in Plaintiff's RFC, the error was harmless because one of the jobs the VE testified she could perform—housekeeper—does not require near acuity.

Because Plaintiff is entitled to a remand on the issue of her fingering and handling limitations, the parties will have the opportunity to further develop the medical record about Plaintiff's glaucoma, and whether it significantly limits her ability to work.

## IV. CONCLUSION

For the reasons stated in this opinion, this Court finds that remand is warranted so that the ALJ may build a logical bridge between the *medical evidence* -- not his lay opinion -- in the record and his ultimate conclusions. However, the Court expresses no opinion as to the ultimate determination of disability on remand. Accordingly, Plaintiff's motion for summary judgment (Dkt. 11) is granted, and the Commissioner's motion (Dkt. 16) is denied. The decision of the ALJ is remanded for further proceedings consistent with this opinion.

Date: October 10, 2017      By: _____
Iain D. Johnston
United States Magistrate Judge